Joseph P. **LONDRIGAN**

v.

**FEDERAL BUREAU OF INVESTIGATION, Appellant.**

**No. 83–1101.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 24, 1983.

Decided Dec. 13, 1983.

Marc Johnston, Atty., Dept. of Justice, with whom J. Paul McGrath, Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., Leonard Schaitman and John C. Hoyle, Attys., Dept. of Justice, Washington, D.C., were on brief, for appellant. R. Craig Lawrence and Richard A. Stanley, Asst. U.S. Attys., also entered appearances for appellant.

William A. Dobrovir, with whom Joseph D. Gebhardt, Washington, D.C., was on brief, for appellee.

Before EDWARDS and GINSBURG, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

We revisit in this appeal a matter the court first inspected in *Londrigan v. Federal Bureau of Investigation,* 670 F.2d 1164 (D.C.Cir.1981) (*Londrigan I*). The issue before us for a second look concerns the application of Exemption 5 of the Privacy Act of 1974, 5 U.S.C. § 552a(k)(5) (1982),[1] to pre-Act Federal Bureau of Investigation (FBI or Bureau) background investigations of prospective federal appointees or employees. Specifically, Privacy Act requester Joseph P. Londrigan sought a court order directing the FBI to disclose the identities of persons who provided information about him to the Bureau in the course of a 1961 background investigation.

Initially, the district court granted summary judgment for the FBI. We found the Bureau's first-round presentation thin and out of accord with the statutory design. We therefore reversed and remanded. After further proceedings, the district court granted summary judgment for Londrigan. That *volte-face,* we hold, was unwarranted.

On remand from *Londrigan I,* the FBI documented the Bureau's routine instructions, operative in 1961, prohibiting agents from disclosing information they gathered. Then, through the submission of affidavits of agents who participated in the Londri-

---

1. The text of this provision is set out *infra* p. 843.

gan background investigation, the FBI did all a court could reasonably demand of the Bureau to show the existence of an implied promise that sources' names would be held in confidence. We therefore hold that Exemption 5 secures against disclosure the names Londrigan requests from the FBI; we reverse the judgment for Londrigan, remand the case, and instruct the district court to grant the FBI's motion for summary judgment.

## I.

*Londrigan I* describes in detail the background and facts of this case; we summarize them briefly here. In 1961, following appellee Joseph P. Londrigan's application for appointment to the Peace Corps, the FBI conducted a routine background investigation of his suitability for employment. In 1975, pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a (1982), Londrigan sought disclosure of the file compiled by the FBI in the 1961 investigation. In 1976, he received copies of the requested materials with deletions to shield the identities of the persons who furnished the information. The Bureau invoked Exemption 5, *id.* § 552a(k)(5), as the basis for the redactions.

Ultimately, in 1978, Londrigan filed this action to compel disclosure of the FBI's sources. The FBI, shortly after answering the complaint, moved for summary judgment; it relied on a sole affidavit supplied by a supervisor at the Bureau's Freedom of Information-Privacy Act Branch. The affiant was not a participant in the 1961 investigation and apparently sought no information from the agents who did participate in it. *Londrigan I,* 670 F.2d at 1167. Essentially, the affidavit was designed to support the FBI's assertion of blanket Exemption 5 coverage for informants in pre-Privacy Act investigations. On this "minimal showing," *id.,* the district court granted summary judgment for the FBI.

A divided panel of this court reversed the judgment and remanded the case to the district court "for further investigation of the facts and circumstances surrounding the acquisition of the information contained in the FBI's file on Londrigan." *Id.* at 1173. The FBI had submitted "a conclusory affidavit," the majority observed, *id.* at 1172; it had made "no effort to contact any of the agents who had conducted the recorded interviews," *id.* at 1167 (footnote omitted). To prevail on the basis of Exemption 5, *Londrigan I* held, "[s]omething more is necessary than a general averment that all information compiled by the agency prior to 1975 was acquired pursuant to implied pledges of [confidentiality]." *Id.* at 1173.

The *Londrigan I* majority set out steps appropriate in the district court on remand: (1) "a careful review of each document should be undertaken to determine the nature of the source ... and whether any statement contained in the document indicates an expectation of confidentiality," *id.* at 1173–74 (footnote omitted); (2) "at least some of the available investigating agents might be consulted to determine whether any promises or assurances were expressly given or impliedly arose," *id.* at 1174 (footnote omitted); (3) "FBI policies prevalent in 1961 may be considered," *id.* (footnote omitted). The court recognized, however, that "the FBI cannot realistically be expected to contact the interviewees themselves." *Id.*

When the case returned to the district court the FBI attended to the *Londrigan I* instructions. The Bureau prepared and presented a schedule listing the nature of the sources from whom the FBI had gathered information (personal acquaintances, record custodians, neighbors, former teachers, former employers).[2] *See* Defendant's Statement of Material Facts as to Which

---

**2.** Appellee challenges with particular vigor the FBI's refusal to supply the names of record custodians. At oral argument counsel for the Bureau observed that, at times, custodians were not expressly authorized to furnish information and did so only because they believed their cooperation with the FBI would be held in confidence. Further, counsel noted that the FBI's confidentiality policy precluded disclosure of the identities of sources, and record custodians may well have relied on that firm policy.

There is No Genuine Dispute at 2–3, reprinted in Joint Appendix (J.A.) at 8–9. It reviewed the documents for explicit confidentiality undertakings, but found only one indication of an express promise. Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment at 5, reprinted in J.A. at 15. It located six of the eight agents who conducted the 1961 interviews and obtained affidavits from them. J.A. at 48–59.

Each of the six agents had performed a large number of background investigations. None specifically recalled Londrigan's investigation, then over twenty years in the past. But each affirmed that he conducted all interviews with the understanding that the information furnished and the identity of the interviewee would remain confidential. Each assumed that interviewees knew of the FBI's policy and expected confidentiality. Whenever an interviewee inquired or appeared to have some doubt about confidentiality, an assurance of confidentiality would be stated. J.A. at 48–49, 50–51, 52–53, 54–55, 56–57, 58–59. Together with these affidavits, the FBI tendered for the record several contemporaneous official communications stating the Bureau's confidentiality policy. J.A. at 22–47.

After considering these FBI efforts to follow the steps Londrigan I counseled, the district court, on November 18, 1982, issued a terse judgment order; it stated, based on its reading of Londrigan I, that the Bureau had "failed to produce evidence sufficient to establish any facts or circumstances from which promises of confidentiality can be implied." Londrigan v. Federal Bureau of Investigation, No. 78–1360 (D.D.C. Nov. 18, 1982), reprinted in J.A. at 78. From the final judgment denying the FBI's motion for summary judgment, and granting Londrigan's, the FBI pursues this appeal.

## II.

It is the main rule under the Privacy Act that an individual shall have access to federal agency records pertaining to him or her. See 5 U.S.C. § 552a(d). Congress excepted, inter alia,

investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment, military service, Federal contracts, or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence.

Id. § 552a(k)(5). This exception, shielding informants' identities, is tightly contained for post-Act investigations. With the main rule on the books, and thus guiding agency conduct, Congress directed that only an express promise of confidentiality would warrant exemption from the disclosure requirement. The exception is less strict for investigations antedating the Act. Adverting to expectations and understandings engendered in the past, Congress permitted non-disclosure based on an agency's implied promise of confidentiality. Our task is to determine whether the FBI, after our remand, demonstrated the requisite implied promise.

It is not enough, we held in Londrigan I, to show that the information supplied was "of a personal nature" or that "the FBI conducted the investigation." 670 F.2d at 1174. The Bureau has now made a stronger demonstration. It has submitted official directives indicating that it was the FBI's standard operating policy in 1961 to require Bureau employees "to keep strictly confidential all information secured in their official capac[ities]." Memorandum from J. Edgar Hoover, Director of the FBI (June 17, 1954), reprinted in J.A. at 22; accord FBI Manual of Rules and Regulations pt. I, 1.B.2, reprinted in J.A. at 23. Further, it showed through the affidavits of the very agents who performed the check on Londrigan that those agents conducted all interviews in accordance with the confidentiality policy stated in FBI directives. Of particu-

lar importance, the agents confirmed that whenever an interviewee raised a question or exhibited doubt as to confidentiality, an express assurance would follow.

Londrigan argues that this showing still lacks the requisite strength. To shield any source, he maintains, the Bureau must prove that the interviewing agent actually conveyed to the person in question a confidentiality guarantee. *See* Brief for Appellee at 8–9, 17. The statutory text precludes the contention that only an express guarantee will do, but Londrigan insists that the implication the statute permits must rest on particularized, source-by-source proof. No name may be withheld, according to Londrigan, unless it is demonstrated that in the particular instance the individual expected and understood that his or her identity would be shielded.

Language in the *Londrigan I* opinion,[3] and in a district court opinion *Londrigan I* cites with approval,[4] may bear this interpretation. In both decisions, however, the courts faced agency claims of virtually automatic exemption based on general allegations concerning "policy." Because of the agency's stance, neither court had to come to grips with the reality now brought home to us by the FBI. The Bureau points to its proof, not mere allegation, of confidentiality commands conveyed to agents who performed background investigations in 1961. It then relies on sworn statements of the agents involved in Londrigan's background investigation, not merely the averments of a headquarters officer, as to the manner in which those agents routinely carried out the Bureau's confidentiality directives. Its argument concludes:

> If the Congressional intent embodied in exemption 5 is to be honored, this evidence must be deemed sufficient to establish an implied promise of confidentiality.

The government can not be expected to present more. The interviews at issue were conducted over 20 years ago pursuant to the policies and general practices in effect at that time. To hold this evidence insufficient, as this district court did, is for all practical purposes to read out of the statute the provision allowing the government to establish that the promise of confidentiality for interviews conducted prior to the effective date of the Privacy Act may be impliedly rather than expressly given.

Brief for Appellant at 15. We agree.

The FBI asserts it has conducted over 800,000 background investigations of the kind at issue here, dating back to 1924. *Id.* at 21. To recall today details of particular interviews conducted decades before the effective date of the Privacy Act, agents would have to possess superhuman memories. In view of this practical consideration, we cannot rate the FBI's current submissions inadequate to support application of the claimed exemption. Were we to read into the statute the source-by-source proof requirement appellee Londrigan presses, we would reduce to the vanishing point the implied promise exemption Congress stipulated for pre-Act investigations.

We do not depart from *Londrigan I* and adopt an automatic exemption for background interviews conducted by the FBI prior to the effective date of the Privacy Act. We do add to what was said in that opinion, based upon the augmented record we now have. We hold that where, as shown here, the FBI has pursued a policy of confidentiality, and demonstrates that the agents involved were alert to that policy, conformed their conduct to it, and routinely assured confidentiality to interviewees who exhibited any doubt, then, absent contrary indicators,[5] the inference should be drawn

---

**3.** *See, e.g.,* 670 F.2d at 1174 n. 48 ("[S]ome basis must be established that the interviewee was actually led to believe or expected that the information he provided would be kept confidential.").

**4.** *Nemetz v. Department of Treasury,* 446 F.Supp. 102, 105 (N.D.Ill.1978) ("Evidence

must be presented based on personal knowledge that an express or implied promise of confidentiality was given to each source sought to be exempted ....").

**5.** For example, if the agency itself had voluntarily disclosed the identities of some of the sources, the implication that others had been

that the interviewees were impliedly promised confidentiality.

■ As to interviews conducted today, Congress has established a rule that agencies can and must follow—sources are not shielded unless they are expressly promised that their identities will not be divulged. During the 1960's period in question, however, Congress had set no such rule. We conclude that, through the 1974 Act implied promise exception, Congress sought to accommodate once prevailing, lawful agency practices. We therefore decline to attribute to Congress an intent to erect a standard that the FBI rarely, if ever, could meet. Because the FBI has now demonstrated with respect to Londrigan's background investigation all that we could reasonably expect it to show to establish an implied promise,[6] we reverse the district court's judgment. Further, we direct the district court, on remand, to enter judgment for the FBI.

*It is so ordered.*

assured confidentiality would not be secure. *Cf. Nemetz,* 446 F.Supp. at 105 n. 3 (agency offered "no explanation why [some] sources were revealed and others claimed exempt").

**6.** This decision has been considered and approved by the full court, and thus constitutes the law of the circuit. *See Irons v. Diamond,* 670 F.2d 265, 268 n. 11 (D.C.Cir.1981).