Kathleen STRANG, Appellant,

v.

**UNITED STATES ARMS CONTROL AND DISARMAMENT AGENCY.**

No. 88–5098.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 2, 1988.

Decided Jan. 10, 1989.

George A. Lehner, for appellant.

Robert E. L. Eaton, Jr., Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellee.

Before RUTH BADER GINSBURG and SILBERMAN, Circuit Judges, and GIBSON,* Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Kathleen Strang is a foreign affairs officer at the United States Arms Control and Disarmament Agency (ACDA). In June 1985, ACDA security officer Berne M. Indahl began an internal investigation into allegations that Strang had breached security procedures by improperly storing, transporting, and disclosing classified documents. On the basis of Indahl's findings and the report of a special security panel, Strang was suspended in December 1986 for six months without pay and deprived of her clearance to view Sensitive Compartmented Information, or "codeword" documents. Strang has since been restored to her position with Top Secret, but not "codeword," security clearance.

In this civil action, Strang seeks, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982 & Supp. IV 1986), and the Privacy Act, *id.* § 552a, the following relief: release of nine memoranda generated during Indahl's investigation and withheld in their entirety by ACDA; amendment of twelve other allegedly inac-

* Of the United States Court of Appeals for the Eighth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

curate memoranda in ACDA's records; and damages for her suspension and loss of codeword clearance, which she claims are the result of ACDA's intentional or willful maintenance of inaccurate records. The district court, on February 25, 1988, granted summary judgment to ACDA on all counts and Strang now appeals.[1] For the reasons stated herein, we affirm the district court's grant of summary judgment except as to Strang's request for the amendment of records concerning her alleged transmission, without proper clearance, of classified information to Japanese officials; we remand that issue for further proceedings in the district court.

## I.

■ Strang first contends that summary judgment was inappropriate because she was not afforded an adequate opportunity to conduct discovery. Strang, however, did not state with sufficient particularity to the district court—or, for that matter, to this court—why discovery was necessary. We therefore reject this opening argument.

Federal Rule of Civil Procedure 56(f) provides that a court *may* deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion. *See, e.g., Londrigan v. FBI,* 670 F.2d 1164, 1175 (D.C.Cir.1981); *see generally* 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2740, at 530–31 (1983). Strang never offered the requisite explanation. She did state generally that discovery "would be invaluable in this case" and would give her "an opportunity to test and elaborate the affidavit testimony already entered." Joint Appendix (J.A.) at 76. But she never stated concretely why she could not, absent discovery,

present by affidavit facts essential to justify her opposition to ACDA's summary judgment motion. Without some reason to question the veracity of affiants such as Indahl, whom Strang sought to depose in May 1986, Strang's desire to "test and elaborate" affiants' testimony falls short; her plea is too vague to *require* the district court to defer or deny dispositive action. In sum, Strang offered no specific reasons demonstrating the necessity and utility of discovery to enable her to fend off summary judgment; the district court, therefore, acted within the bounds of its discretion in not granting a continuance for Strang to conduct discovery.

■ Strang also objects on appeal to ACDA's inclusion of two additional affidavits in the agency's district court reply brief in support of summary judgment; those affidavits, she now maintains, should be regarded as a separate or supplemental motion. Because the affidavits were served on the day of the hearing, she contends, their introduction violates Rule 56(c), which provides that a motion shall be served ten days prior to the hearing. This claim is insubstantial. First, the affidavits merely supported the existing motion and did not constitute a new motion for summary judgment on additional issues or grounds. *Cf. Laningham v. United States Navy,* 813 F.2d 1236, 1240–41 (D.C.Cir. 1987). Second, by her silence in the district court, Strang waived any valid objection she may have had to the late introduction of additional affidavits. She neither objected to the district court's consideration of the additional affidavits, nor asked for time to respond to them. *See Woods v. Allied Concord Financial Corp.,* 373 F.2d 733, 734 (5th Cir.1967); *cf. CIA. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 409–10 (1st Cir.1985).

---

**1.** On December 16, 1986, the district court had denied ACDA's summary judgment motion on Strang's claim for release of documents because there then appeared to be a genuine issue of material fact as to whether the sources of the information in the documents were given express promises of confidentiality; the district court simultaneously had denied ACDA's motion

to dismiss Strang's record amendment claims for failure to exhaust administrative remedies. Following that decision, ACDA granted some of Strang's amendment requests and supplemented the record with Indahl's affidavit attesting that he expressly promised confidentiality to the sources. *See* Joint Appendix (J.A.) at 142 (Feb. 25, 1988 Memorandum Opinion).

## II.

Strang next argues that the district court should not have granted summary judgment to ACDA on her claim for the release of nine memoranda because there are genuine issues of material fact regarding whether the sources of information in those memoranda were promised confidentiality. We reject Strang's contention, and affirm the district court's decision, because Indahl's affidavit provides adequate assurance that the sources were expressly promised confidentiality.

FOIA and the Privacy Act both provide for the fullest possible disclosure of agency records to the public, subject to certain exceptions. ACDA asserts that the memoranda sought by Strang are exempt from the disclosure requirements by FOIA section (b)(7)(D) and Privacy Act sections (k)(2) and (k)(5). FOIA section (b)(7)(D) exempts

> records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information ... could reasonably be expected to disclose the identity of a confidential source, ... and, in the case of a record or information compiled by ... an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). Section (k)(2) of the Privacy Act provides that an agency may promulgate rules exempting from the disclosure requirements

> investigatory material compiled for law enforcement purposes, ... *Provided, however,* That if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source

who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence.

*Id.* § 552a(k)(2). Privacy Act section (k)(5) allows the agency to establish rules exempting

> investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment ... or access to classified information, but only to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence, or, prior to the effective date of this section, under an implied promise that the identity of the source would be held in confidence.

*Id.* § 552a(k)(5). ACDA's implementing regulations mirror the terms of the statutory exemptions. *See* 22 C.F.R. §§ 602.-31(g)(4), 603.8(a)(2)–(3) (1988).

■ As a preliminary matter, we reject Strang's assertion that the memoranda were not "compiled for law enforcement purposes" within the meaning of section (k)(2). First, Strang did not dispute the applicability of section (k)(2) before the district court. It is firmly established that "issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1084 (D.C.Cir.1984); *see also id.* at 1078. Second, even if this issue were properly preserved for appellate consideration, we do not interpret "law enforcement" as limited to *criminal* law enforcement, as Strang would have us do; rather, we read the term as encompassing the enforcement of national security laws as well.[2] Al-

---

2. *Vymetalik v. FBI,* 785 F.2d 1090 (D.C.Cir.1986), does not contradict our interpretation of section (k)(2). In that case, this court held that section (k)(2) did not apply to records compiled during an investigation of an FBI job applicant. The

court stated that such records fell clearly within the scope of section (k)(5) because they were gathered for the purpose of determining the applicant's " 'suitability, eligibility, or qualifications for Federal' " employment. *Id.* at 1095

though Strang has not been subject to criminal prosecution, her suspension and loss of codeword security clearance resulted from her undisputed breach of national security regulations. *See* J.A. at 49–53 (letters to Strang from ACDA Director Kenneth Adelman and Administrative Director William Montgomery); *id.* at 106–09 (memorandum of ACDA special security panel).

▮ Because all three exemptions are applicable, the real bone of contention is whether the sources of the information in the nine withheld memoranda were expressly promised confidentiality.[3] ACDA relies on Indahl's affidavit, which describes the procedures Indahl followed when interviewing individuals about Strang:

> In each case, at the outset, either I asked whether the source desired confidentiality or I received requests that I understood to be requests for confidentiality. In some instances, the requests were made specifically in terms of "confidentiality." In others, the requests were cast in such terms as: "this is just between you and me" or "this is not for attribution." In all cases, I responded with words of agreement such as "this will be treated as confidential" or "O.K." or "your name will not be used." The foregoing applies to all sources whose identities have been protected by with-

holding in whole or in part the particular documents .... I can positively assert that with respect to each source identified in these documents, express promises of confidentiality were given by me under the circumstances just described. In all cases, the requests for and promises of confidentiality were made prior to the origin of the communications that have been withheld in whole or in part.... I have re-examined each of the documents withheld in whole or in part with a view to releasing more information. I have concluded, however, that release of more information would run the risk of disclosing the identities of those to whom express promises of confidentiality were given.... [T]his is largely because ACDA is such a small organization and several of the sources are or were co-workers.

*Id.* at 44–46.

Strang offers no evidence that effectively contradicts this affidavit;[4] the district court did not err, we conclude, in counting it sufficient to support summary judgment. Although the affidavit does not recite a precise verbal formula used in each case, or refer to tangible evidence such as Indahl's notes, *see* Brief for Appellant at 24; Reply of Appellant at 5–7, the affidavit is definite enough to assure the court that Indahl

(quoting 5 U.S.C. § 552a(k)(5)). "To hold that all employment investigation records fall within the law enforcement records exemption," the court reasoned, "would read subsection (k)(5) ... out of the statute." *Id.* at 1096. Unlike *Vymetalik*, this case involves not a job applicant undergoing a routine check of his background and his ability to perform the job, but an existing agency employee investigated for violating national security regulations. Thus, sections (k)(2) and (k)(5) are both by their terms fully applicable.

3. Although FOIA section (b)(7)(D) refers to "confidential source" rather than express promises of confidentiality per se, we see no reason—and neither party offers any—to treat that section's reference to confidentiality differently from Privacy Act sections (k)(2) and (k)(5) in this case.

4. We are not persuaded by Strang's attempts to show that Indahl had a "clear bias" against her. *See* Brief for Appellant at 25. Moreover, we fail

to see how her allegations show that Indahl did not promise confidentiality. Strang features statements made by ACDA Director Adelman in a letter to Administrative Director Montgomery that "[t]he investigation ... was conducted with insufficient attention given to the employee's side of the case" and "[t]here was an effort by some co-workers to cast Ms. Strang in the worst possible light." J.A. at 85. These observations, however, do not materially support Strang's claim that Indahl did not promise confidentiality to his sources. *See* Brief for Appellant at 24. The fact that Indahl contacted the sources after the investigation to ask whether they *still* desired confidentiality, *see* J.A. at 45, does not prove that Indahl did not promise confidentiality to the sources *before* they provided information. *See* Brief for Appellant at 24. Finally, Indahl's initial failure to date other disclosed memoranda containing negative statements from unidentified sources in no way proves that Indahl did not promise confidentiality to the sources of the withheld memoranda. *See id.* at 25.

expressly promised confidentiality to each individual.

This court's decision in *Londrigan v. FBI (Londrigan II)*, 722 F.2d 840 (D.C.Cir. 1983), supports our conclusion. In that case, this court directed the district court to grant summary judgment to the FBI on a section (k)(5) claim. Two kinds of submissions presented in the district court prompted this court's direction: first, affidavits from six agents, each of whom "affirmed that he conducted all interviews with the understanding that the information furnished and the identity of the interviewee would remain confidential," even though none of the agents specifically recalled the twenty-year-old investigation at issue; second, "several contemporaneous official communications stating the [FBI]'s confidentiality policy." *Id.* at 843.[5] Because *Londrigan II* involved an investigation that antedated the Privacy Act, the FBI needed to prove only that sources were given an *implied* promise of confidentiality, a "less strict" standard. *Id.* Indahl's affidavit, however, in contrast to the ones in *Londrigan II*, recounts the Strang investigation itself and specifically states that Indahl expressly promised confidentiality to all of the sources of information in the withheld documents. It thus satisfies the stricter standard, which calls for proof of an *express* promise. We therefore affirm the district court's grant of summary judgment to ACDA on Strang's claim for release of the nine withheld memoranda.[6]

### III.

Strang also seeks amendment of three sets of memoranda that she alleges violate section (e)(5) of the Privacy Act; that provision requires an agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). We conclude that the district court properly granted summary judgment with regard to two sets of memoranda, but that summary judgment was premature with respect to the third set.

■ Two memoranda in the investigative file state that Strang "compromised" classified material by leaving her office safe open overnight. J.A. at 12, 17. Strang questions the use of the word "compromise." She contends that the references to "compromise" present a genuine issue of material fact whether the memoranda are sufficiently accurate to assure fairness. She bases this claim on her assertion that the meaning of the term is not uniform in the record. In some parts of the record, she argues, "compromise" seems to refer to the actual viewing of classified information by unauthorized personnel, *see, e.g., id.* at 108 (special security panel memorandum stating that " 'compromise' ... can occur where persons not authorized access ... view sensitive information for which they are not cleared"), whereas in other parts the term refers to the exposure of classi-

---

5. In *Londrigan v. FBI (Londrigan I)*, 670 F.2d 1164 (D.C.Cir.1981), an earlier consideration of the same case, this court held that something more was necessary than the affidavit of an FBI FOIA–Privacy Act administrator who was not involved in the investigation at issue and had not even sought information from the investigating agents, and who averred merely that "all information compiled by the agency [during the period of the investigation] was acquired pursuant to implied pledges of [confidentiality]." *Id.* at 1173; *see also Nemetz v. Department of Treasury*, 446 F.Supp. 102, 105 (N.D.Ill.1978) (holding that general allegations of agency's policy of promising confidentiality were insufficient to trigger (k)(5) exemption). Upon remand, the FBI offered the affidavits of agents involved in the Londrigan investigation and the agency's

routine instructions, operative during the investigation, concerning confidentiality. *See Londrigan II*, 722 F.2d at 843.

6. In her brief, Strang presses the additional argument that the district court should have examined the withheld documents in camera to determine de novo whether ACDA could release any portions without disclosing the identity of confidential sources. Brief for Appellant at 37–38. As Strang's counsel made evident at oral argument, however, and as our review of the transcript of the district court hearing shows, *see* J.A. at 147–78, Strang did not raise this issue below and therefore did not properly preserve it for appeal. *See District of Columbia v. Air Florida*, 750 F.2d 1077, 1078, 1084 (D.C.Cir.1984).

fied information to *possible* unauthorized access, *see id.* at 12, 17. Strang then states, without explanation, that the former definition is the "best." Brief for Appellant at 27. Use of "compromise" therefore violates section (e)(5), she concludes, because ACDA has offered no evidence that any unauthorized person actually viewed the classified information in Strang's safe.

We agree with the district court that in the context of the two memoranda Strang seeks to amend, "compromise" clearly refers to the *potential* for unauthorized access; *i.e.*, any document that is exposed to possible viewing by unauthorized persons is, for security reasons, *presumptively* considered compromised:

> Four co-workers ... and her former supervisor ... stated [that Strang] repeatedly left her safe open overnight in a nonsecure area. This placed codeword material within easy access for compromise.... Consequently she compromised extremely sensitive classified information.

*Id.* at 12.

> Security violations resulting from open safes where the material was not secured for a short period of time after the close of business until discovery by a guard can result in a finding of remote compromise. However sources disclosed that Ms. Strang had numerous open safe violations over a long period.

*Id.* at 17. Because "compromise" in the context of the relevant memoranda clearly refers to *potential* unauthorized access to classified information, and because Strang does not dispute the memoranda's account of her leaving classified documents in an open safe overnight, the memoranda are sufficiently accurate to assure fairness to Strang.

Strang's second amendment request concerns eight undated memoranda in the investigative file compiled by Indahl. *Id.* at 12–13, 16–22. As the district court pointed out, Indahl has supplied approximate dates for the memoranda and ACDA has made those dates part of the investigative file. *See id.* at 115. Although Indahl did not recall the precise day he composed each memorandum, his list does provide a close approximation for each, *e.g.*, "early August 1985." *Id.* These dates are sufficiently accurate and timely to satisfy section (e)(5).[7]

Strang's third amendment request is more substantial. It involves two memoranda charging that she transmitted to foreign officials a document containing information not properly cleared for dissemination. *Id.* at 21, 22. The memoranda refer to Korean officials, but ACDA later found, upon notification from Strang, *id.* at 89 (Strang affidavit), that the incident in question actually involved Japanese officials. *Id.* at 73 (note amending memoranda); *id.* at 135–36 (affidavit of Mary Elizabeth Hoinkes, ACDA Deputy General Counsel). Strang disputes that the document at issue contained uncleared information and argues that there was insufficient evidence of the lack of clearance to support summary judgment for ACDA. In her affidavit, moreover, Strang avers specifically that the information had been cleared for release by five named government officials. *Id.* at 90.

The only proof ACDA presented to the district court that the information was uncleared was the affidavit of Mary Elizabeth Hoinkes, ACDA's Deputy General Counsel, *id.* at 131–37, and a letter from ACDA Director Adelman to Strang responding to Strang's amendment requests, *id.* at 140–41. Both the Hoinkes affidavit and the Adelman letter merely state the investigation's conclusion that the information was uncleared; neither submission presents any evidence to support that conclusion. *Id.* at 136, 140–41. Moreover, neither Hoinkes nor Adelman reveals exactly what information in the document was uncleared: Hoinkes states generally that the document Strang passed to the Japanese officials "contained material which had not been

---

7. In her brief, Strang also requests that the names of the sources of unattributed statements be added to the file. Brief for Appellant at 19,

31. Yet again, however, Strang did not properly preserve this issue for appeal because she never raised it before the district court.

cleared for use in diplomatic channels," *id.* at 136, while Adelman claims that "three items in the document" had not been cleared, without specifying what those three items were, *id.* at 140.

The Privacy Act requires that a court consider de novo an agency's refusal to amend its records. 5 U.S.C. § 552a(g)(2)(A). The lack of evidence before the district court supporting ACDA's conclusion that some information was uncleared and the court's Memorandum Opinion make it evident that the court failed to consider this matter de novo:

> [D]efendant concluded after a lengthy investigation that although plaintiff had good and sufficient reason to assume that she was authorized to transmit a properly cleared document, the document that she did transmit had not been properly cleared. Defendant decided to retain this material in the file because it concluded that plaintiff was careless in failing to ensure the necessary clearances.

J.A. at 144.

■ ACDA argues that the Act does not require the agency or the court, in its de novo review, to determine whose view is correct, as long as the records generally assure fairness to the individual. Brief for Appellees [sic] at 12. ACDA cites as support for this proposition *Doe v. United States,* 821 F.2d 694 (D.C.Cir.1987) (en banc). In *Doe,* the district court had held that the State Department had assured fairness to the plaintiff by including in its records conflicting reports of what she had said in an interview, without stating whose account—Doe's or the interviewing agent's—the Department believed. On appeal, this court affirmed, but emphasized that the case was "atypical." *Id.* at 699. The presence of only Doe and the agent at the interview made what occurred "unknowable" to third persons. *Id.* at 700. Under those special circumstances, we held, the agency and the district court, on de novo review, were not required to "find and record 'truth'"; instead, it sufficed to "adjust [the] file equitably to reveal actual uncertainty." *Id.* at 701.

*Doe* was thus a narrow decision. *See id.* at 701–02 n. 20. It surely does not support the broad proposition advanced by ACDA that the district court need not determine definitively the accuracy of the agency's records, as long as the agency somehow can be said to have acted fairly. The *Doe* court stated that "'de novo' ... has no different, diminished meaning in the context" of section (e)(5), but requires "here, as it ordinarily does, a fresh, independent determination of 'the matter' at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion." *Id.* at 697–98. "In the *typical* Privacy Act case," the court continued, "it is feasible, necessary, and proper for the agency and, in turn, the district court to determine whether each filed item of information is accurate." *Id.* at 699 (emphasis added).

This case fits the "typical" mold; it differs from *Doe* in two key respects. First, the records of the Strang investigation are not ambivalent about what happened; they conclude that Strang passed uncleared information to foreign officials. The agency thus made a final judgment about the occurrence. The court, in turn, must review the evidence de novo to ensure that the agency's judgment is sufficiently accurate to ensure fairness.

Second, the facts at issue here are susceptible of proof. The court can determine what information in the document is actually in question by reviewing the document itself and asking ACDA to point out the items it claims were not cleared. The court can then receive evidence from both sides to determine whether those items were properly cleared. The court might, for example, entertain affidavits from the five individuals Strang claims cleared the document, and receive evidence from ACDA showing what individuals' clearances were required for the information at issue. If, after reviewing the parties' submissions, the court determines that a genuine issue of material fact exists as to whether the information received the requisite clearance, the court should deny ACDA's motion for summary judgment on that issue.

In light of the record's erroneous original assertions that Strang passed information to *Korean* officials, *see supra* p. 865, the need for independent, undeferential judicial review is apparent. If, as the Hoinkes affidavit claims, the supporting evidence contains extremely sensitive information, J.A. at 136, the district court can take up Ms. Hoinkes' offer to present a detailed, classified declaration for in camera review. *Id.*

## IV.

■ Finally, Strang asserts a claim for monetary damages under sections (g)(1)(C) and (g)(4) of the Privacy Act; these sections provide that an agency shall be liable for actual damages or no less than $1,000 plus costs and attorneys fees where the agency intentionally or willfully

fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual.

5 U.S.C. § 552a(g)(1)(C), (g)(4). Thus, Strang must show, to qualify for damages, that ACDA's determination to suspend her and revoke her codeword clearance was caused by its intentional or willful failure to maintain accurate records. The district court granted summary judgment on this claim because "there is no suggestion that [ACDA] acted 'without grounds for believing [its actions] lawful' or that it flagrantly disregarded the rights guaranteed under the Privacy Act," J.A. at 145 (quoting *Laningham v. United States Navy*, 813 F.2d at 1242 (citations omitted)), and because Strang admitted to numerous security violations. *Id.*

We affirm the district court's grant of summary judgment to ACDA on Strang's damage claim. The only records whose accuracy is still in question are the memoranda that deal with the transmission of information to Japanese officials. Even if these memoranda are inaccurate, and even if we indulge the assumption that the agency acted intentionally or willfully, there is ample evidence in the record that the memoranda played no part in Adelman's suspension of Strang and revocation of her codeword clearance. In his December 29, 1986 letter to Strang, Adelman stated that the "suspension is based upon your uncontested violations of security regulations .... This suspension is not based on any information which you have challenged as being inaccurate or incomplete or on any information which has not been fully disclosed to you." J.A. at 52. Adelman was more specific in his May 6, 1987 letter responding to Strang's appeal:

The matter of transmittal of a document to officials of a foreign government on the occasion of the trip to Seoul and Tokyo in 1984 did not come to our attention until after the August "cutoff" date we had agreed upon with respect to the investigation then being undertaken. In light of this fact, it formed no part of my decision regarding your clearance or suspension from ACDA for six months.

*Id.* at 60.

Finally, a note attached to the two memoranda stating that the alleged incident occurred in Tokyo, not Seoul, and involved Japanese, not Korean, officials repeated another portion of the May 6, 1987 letter:

I find no excuse for the carelessness with which the matter was handled. However, after reviewing this matter and after consultation with other interested agencies and taking into consideration the sanctions which have been imposed as a result of the prior investigation, I have decided to take no further action with respect to the document transmitted in Tokyo.

*Id.* at 73; *see also id.* at 72 (Dec. 10, 1987 letter repeating Adelman's decision to retain the two memoranda in the record "but to take no further action").

In light of Adelman's numerous statements that his decision to suspend Strang and revoke her codeword clearance was unrelated to the only two memoranda still at issue, there is no basis on which a rea-

sonable trier could find that the sanctions were causally connected to the memoranda. We therefore affirm the district court's grant of summary judgment to ACDA on Strang's damage claim.

## CONCLUSION

For the reasons stated in this opinion, we reverse the district court's grant of summary judgment to ACDA on Strang's request to amend the records concerning her transmission of allegedly uncleared information to foreign officials; we remand that issue for de novo review of the parties' evidence, in camera if and to the extent necessary. In all other respects, we affirm the district court's grant of summary judgment to ACDA.

IT IS SO ORDERED.