Nestor R. TALINAO, Plaintiff,

v.

John E. POTTER, Postmaster General, et al., Defendants.

No. CIV.A. 03–1195(JR).

United States District Court, District of Columbia.

Sept. 2, 2005.

James Burton Travis, Lipshultz & Hone, Chartered, Silver Spring, MD, for Plaintiff.

Rhonda C. Fields, United States Attorney's Office, Washington, DC, for Defendants.

## MEMORANDUM

ROBERTSON, District Judge.

Nestor R. Talinao sues the United States Postal Service (USPS) for discrimination on the bases of race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 20003 *et seq.* USPS moves for summary judgment. Because Mr. Talinao has not made out a prima facie case of the race and national origin discrimination he alleges, the government's motion must be **granted**.

*The maintenance selection system*

The system USPS uses to promote maintenance employees is unbelievably complex. It first classifies applicants for maintenance positions as "entrance applicants," who do not work for USPS, "inservice applicants," who are career USPS employees, and "incraft applicants," who are maintenance craft career employees like Mr. Talinao, and who are given priority for maintenance craft positions, Def.

Ex. 4 at 2. An incraft applicant does not apply for a specific position but for placement on one or more promotion eligibility registers (PER) (*e.g.,* for building equipment mechanic, electronic technician). His first step is to complete a maintenance employee application. The application is sent to the National Testing Administration Center (NTAC) which keeps track of "application components." *Id.* at 11. Those components include a knowledge, skills, abilities (KSAs) booklet, also known as candidate supplemental application (CSA) booklet, for each type of position applied for, *id.* at 10; a written examination; and evaluations by a supervisor and a review panel. *Id.* at 14–18. The application components are scored by NTAC, and the applicant is rated either eligible or noneligible for placement on the PER or PERs for which he has applied. Def. Ex. 3 ¶ 5.

If an incraft applicant has been rated noneligible for a PER, he may not reapply for that PER except through an "updating process." He may request an "updated" rating when he has obtained further education or training relevant to the KSAs required for a certain position. Def. Ex. 4 at 9. Update requests are reviewed by the maintenance selection system coordinator and either approved or disapproved. *Id.* at 22. If a request is approved, the coordinator completes an update form that identifies the KSAs approved for update and gives the applicant a KSA booklet. The applicant provides information as to the KSAs that have been approved for update and has five working days to return the KSA booklet to the coordinator (ten working days if he has more than five KSAs to address). *Id.* at 23. Once the KSA booklet is returned to the coordinator, it is sent to NTAC. The applicant may then be

scheduled, if necessary, for update examinations, review panels, and supervisor evaluations. *Id.* at 23–4.

*Plaintiff's attempts to "update"*

Nestor Talinao is of Filipino descent and national origin. He was hired by USPS in 1993 as a maintenance mechanic. His claim in this case is that he was unfairly denied the opportunity to "update" for three promotion positions.

In March 1997, Mr. Talinao took the examination for building equipment mechanic (BEM–07) and was scored "ineligible." In July 1997, he took the examinations for maintenance mechanic (MPE–07) and electronic technician (ET–09), and he re-took the examination for BEM–07. On October 31, 1997, Mr. Talinao was advised by his supervisor Ralph Howard that his score from the July 1997 examination for BEM–07 would be disregarded because he had previously applied for BEM–07 and had not "updated." Mr. Taliano scored ineligible on the exams for MPE–07 and ET–09 as well, so he would be required to "update" to re-apply for any of the three positions.

Mr. Taliano began the updating process in March 1998 by receiving additional training and education. He submitted partial updates for the MPE–07 and ET–09 positions to his MSS coordinator, Steven Mummendey, who determined that he had obtained relevant training for the MPE–07 position (but not the ET–09 position),[1] and he forwarded "update setup" forms for the MPE–07 and BEM–07 positions to the Postal Service Hiring and Testing Office, so that that office could set up a panel interview and an examination date. Mummendey Decl. ¶ 13. In October 1998, Mr. Talinao asked Mr. Mummen-

---

1. Mr. Talinao had not completed the update requirements for ET–09. Mummendey Decl. at ¶ 13.

dey about the status of his MPE–07 update. Mr. Mummendey checked its status and learned that the Hiring and Testing Office had not processed Mr. Talinao's update form or sent him a KSA booklet, so he helped him to fill out an update form for the MPE–07 position and provided him with a KSA booklet. *Id.* at ¶¶ 15–16. During the October 1998 meeting, according to Mr. Talinao, Mr. Mummendey questioned him about his immigration status and asked to see his green card. On October 6, 1998, Mr. Talinao contacted an EEO counselor and complained that Mr. Mummendey had questioned him about his citizenship and immigration status and had not allowed him to test for the three positions. Def. Ex. J. Redress mediation on Mr. Talinao's discrimination claim was unsuccessful, Def. Ex. K, but USPS agreed to use Mr. Talinao's July 1997 examination—the score that had previously been disregarded—for his BEM–07 update. Unfortunately for Mr. Talinao, the NTAC report showed that he had scored ineligible on that examination. Def. Statement of Material Facts ¶ 15.

For the ET–09 and MPE–07 positions, Mr. Mummendey sent the plaintiff a KSA booklet on November 1, 1999, and scheduled him to go before the review board on November 16, 1999. Def. Ex. 10. There is a dispute in the record as to whether Mr. Talinao turned in the KSA booklet or showed up for his appointment before the review board, but it is not a material dispute, because Mr. Talinao never took the required examination. Two letters were mailed to Mr. Talinao on December 8, 1999, scheduling him for two examinations on January 4, 2000. Def. Ex. 11. Mr. Mummendey asserts that he sent Mr. Talinao a memorandum on December 30, 1999, explaining the steps he had to take in order to update and informing him that he had been scheduled to take an exam on January 4, 2000. Def. Ex. 13. When Mr. Talinao did not appear for the examinations he was deemed to have abandoned the update process.[2]

*Rule 56(f) motion*

■ Mr. Talinao first resists summary judgment by asserting that he "cannot for reasons stated present by affidavit facts essential to justify the party's opposition," Fed.R.Civ.P. 56(f), but his motion does not contain the requisite specific reasons that "adequately explain[ ]" why he cannot oppose summary judgment. *Strang v. U.S. Arms Control and Disarmament Agency,* 864 F.2d 859, 861 (D.C.Cir.1989); *see Byrd v. EPA,* 174 F.3d 239, 248 n. 8 (D.C.Cir. 1999).

Mr. Talinao states only that he needs more time to find a witness with "personal knowledge regarding the circumstances surrounding plaintiff's claim," Pl. Opp'n at 2, to replace his former supervisor Ralph Howard, who is now deceased; that co-workers are "hesitant to openly corroborate my claim, though they privately do," Talinao Decl. ¶ 34; and that USPS refused to respond to certain discovery requests

---

**2.** Because the plaintiff is the non-movant, these facts are taken primarily from the plaintiff's pleadings in an effort to read all disputed facts and inferences in his favor. *See Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). This was done with difficulty, however, because the plaintiff has failed to provide the court with "a separate concise statement of genuine issues setting forth all material facts as to which it contended there is a genuine

issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement," as required by Local Civil Rule 7(h), and because plaintiff's opposition includes no citation to the record apart from a solitary reference to the plaintiff's own declaration. Plaintiff also refers to an affidavit of his supervisor Larry Holton, but the affidavit is not attached to his motion.

that he had propounded. He has not indicated what facts he hopes to elicit in further discovery, nor has he explained how those facts would create a genuine issue of material fact. He had ample time to find other witnesses when he learned that Mr. Howard was unavailable, he chose not to take the depositions of any of his co-coworkers, and he did not bring the asserted discovery dispute to the court's attention in a timely matter. The Rule 56(f) motion will be denied, and the Court will consider the motion for summary judgment on the current record.

*Race and national origin discrimination claim*

■ A prima facie case of disparate treatment requires a showing that the plaintiff belongs to a protected class; that he suffered an adverse employment action; and that the adverse action gives rise to an inference of discrimination. *George v. Leavitt*, 407 F.3d 405, 412 (D.C.Cir.2005). A prima facie case of discriminatory failure to promote requires a showing that the employee belongs to a protected class; that he was qualified and applied for an open position; that he was not selected for the position; and that the position remained open and the employer continued to seek other applicants with the plaintiff's qualifications. *Carter v. George Washington University*, 387 F.3d 872, 878 (D.C.Cir. 2004). If the plaintiff proves a prima facie case, a rebuttable presumption of discrimination arises and the burden of production shifts to the defendant to proffer a legitimate and nondiscriminatory reason for the adverse action or the failure to promote. *Leavitt*, 407 F.3d at 412. If the defendant meets this burden, the presumption of discrimination disappears and "a court reviewing summary judgment looks to whether a reasonable jury could infer in-

tentional discrimination ... from all the evidence, including '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its action; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'" *Id.* (citing *Waterhouse v. District of Columbia*, 298 F.3d 989, 992–93 (D.C.Cir.2002)).

Mr. Talinao's facts fall somewhere between a straight disparate treatment case and a failure to promote case. He was applying, not for a specific open position, but for placement on a promotion eligibility register from which incraft applicants were promoted.[3] He complains, not of non-selection, but of the defendant's refusal to allow him to apply for selection. Specifically, he complains of the disallowance of his 1997 BEM–07 examination (he scored ineligible in any case); Mr. Mummendey's 1998 failure to approve his requests to take the MPE–07 and ET–09 examinations; and USPS's determination that he had abandoned the update process in 2000.

On this record, a reasonable juror could not find that Mr. Talinao has raised an inference of discrimination. He asserts disparate treatment in the MSS promotion process, but he has made no showing that co-workers were similarly situated—that they scored noneligible on various exams, or failed to complete elements of the update process, as he did. Indeed, plaintiff has not provided any information about his co-workers—not even any information about their race and national origin. *See Holbrook v. Reno*, 196 F.3d 255, 262 (D.C.Cir.1999); *George v. Leavitt*, 407 F.3d

---

**3.** Promotion from a PER is not automatic. One's position on the register is determined by the results of the MSS process.

405, 412 (D.C.Cir.2005) (plaintiff may prove inference of discrimination by showing he was treated differently than similarly situated employees outside the protected class). If Mr. Mummendey's asking about Mr. Talinao's citizenship and demanding proof of his immigration status can be properly characterized as derogatory or discriminatory at all, it does not raise an inference of racial or national origin animus. *See Hall v. Giant Food, Inc.,* 175 F.3d 1074, 1078 (D.C.Cir.1999) (discrimination cannot be proven based solely on one discriminatory remark).[4]

If this were classified as a failure to promote case, Mr. Talinao might raise an inference of discrimination by showing that USPS's actions are "not attributable to 'the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'" *Stella v. Mineta,* 284 F.3d 135, 145 (D.C.Cir.2002) (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 358 n. 44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). He has not made such a showing here. It is undisputed that he had to go through the update process for each of the three positions because he scored noneligible for each of them on his first attempt. Def. Statement of Material Facts ¶¶ 11, 15–16. A required component of the update process was an examination that Mr. Talinao was scheduled to take for MPE–07 and ET–09 on January 4, 2000.[5] He has not refuted USPS's evidence that he was informed of his examination date by Ms. Diane Dade and by Mr. Mummendey. *Id.* at ¶¶ 21–22.

His failure to appear for the tests is fatal to his showing that he was qualified for promotion, and therefore fatal to his prima facie case.

An appropriate order accompanies this memorandum.

### *ORDER*

For the reasons stated in the accompanying memorandum, the defendant United States Postal Service's motion for summary judgment [# 17] is **granted.**

---

4. "I appeared at Steven Mummendey's office on October 5, 1998 to discuss the status of my pending applications. During our conversation, he asked me what was my status, to which I replied that I was a permanent resident. In response to my statement, Mr. Mummendey demanded to see documentation to that effect. I showed him my green card and we concluded the conversation." Pl. Declaration ¶ 18.

5. The agreement he had reached with USPS to allow the results of his July 1997 examination for BEM–07 was of no benefit to him, since, as it turned out, he scored ineligible on that examination.