174 F.3d 231
 JoAnn CARPENTER, Appellant,
v.
FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellee.
 No. 98-7170.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 23, 1999.
Decided April 27, 1999.
 
 Appeal from the United States District Court for the District of Columbia (No. 98cv00563).
 Nicholas H. Hantzes argued the cause for the appellant. Kenneth M. Robinson was on brief for the appellant. Dennis M. Hart entered an appearance.
 Juanita A. Crowley argued the cause for the appellee. John Payton was on brief for the appellee.
 Before: EDWARDS, Chief Judge, SENTELLE and HENDERSON, Circuit Judges.
 Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.
 KAREN LeCRAFT HENDERSON, Circuit Judge:
 
 
 1
 JoAnn Carpenter, employed at the Federal National Mortgage Association (Fannie Mae), appeals the district court's grant of summary judgment to Fannie Mae on her claim that her supervisors retaliated against her in violation of the District of Columbia Human Rights Act (DCHRA), D.C.Code §§ 1-2501 et seq. Carpenter specifically alleges that they retaliated by downgrading her performance rating and by rejecting her for a senior vice president position following her decision to appeal the district court's dismissal of her original discrimination claim against Fannie Mae. Carpenter now contends that she presented sufficient evidence to allow a reasonable jury to conclude that Fannie Mae's proffered reasons for her downgrading and nonselection were pretextual. Alternatively, Carpenter asserts that she should be allowed discovery. We affirm for the reasons set forth below.
 
 I.
 
 2
 Since 1987, Carpenter has been a Vice President and Deputy General Counsel at Fannie Mae. In the summer of 1996, Fannie Mae decided to promote a different vice president into a new supervisory position. Carpenter claimed that she was not considered for the position despite her seniority. On learning of the promotion, Carpenter met in September 1996 with her supervisors, Anastasia Kelly and Anthony Marra, and complained of gender discrimination. According to Carpenter, Marra told her to "drop" her claim and Kelly warned her to "not cut off [her] nose to spite [her] face." Carpenter v. Federal Nat'l Mortgage Ass'n, No. 1:98CV00563, at 9 (D.D.C. Apr. 20, 1998) (Aff. of Pl. JoAnn Carpenter and Rule 56(f) Aff.) [hereinafter 56(f) Aff.], Joint Appendix (JA) 74.
 
 
 3
 On October 17, 1996 Carpenter filed an employment discrimination lawsuit, alleging gender discrimination under DCHRA due to Fannie Mae's refusal to promote her and for certain retaliatory acts that occurred after she gave notice of her claim. Following contentious discovery that included allegations of untruthful statements by Kelly and Marra, the district court granted summary judgment to Fannie Mae, see Carpenter v. Federal Nat'l Mortgage Ass'n, No. 96-2399 at 28 (D.D.C. Oct. 28, 1997) (Carpenter I), and we affirmed, see Carpenter v. Federal Nat'l Mortgage Ass'n, 165 F.3d 69 (D.C.Cir.1999). Within two weeks after filing her appeal, Carpenter learned that she had been given a performance rating of 4+, a slight downgrade from the ratings of 5 and 5- that she received for the previous seven years. Soon after, Kelly rejected Carpenter for a senior vice president position that had opened up in the General Counsel's office.
 
 
 4
 On March 5, 1998 Carpenter filed a second lawsuit under DCHRA, D.C.Code § 1-2525(a),[1] against Fannie Mae alleging that it had retaliated against her for pursuing Carpenter I by downgrading her performance rating and denying her a promotion to senior vice president. See Carpenter v. Federal Nat'l Mortgage Ass'n, No. 98-563 (D.D.C. Aug. 3, 1998) (Carpenter II), JA 819. In response, Fannie Mae moved for summary judgment, contending that: (1) it gave Carpenter a lower rating because her performance was compared against a larger pool of vice presidents than in the past and because Julie St. John and Michael Williams, two senior vice presidents in client departments, had criticized her work[2] and (2) it rejected Carpenter for the senior vice president position because it desired an attorney with litigation experience (which she admittedly did not have). Carpenter countered that Fannie Mae's motion was premature given the lack of discovery. As to her rating, Carpenter argued that her past evaluations and comments of other "clients" directly contradicted the criticisms against her and therefore raised an issue as to whether Kelly and Marra actually relied on the criticisms in downgrading her. As to the promotion, Carpenter argued that "litigation experience" had never been a prerequisite for senior vice president and questioned whether Fannie Mae had in fact relied on the criteria. Finally, Carpenter argued that the September 1996 admonitions of Kelly and Marra to give up her discrimination claims constituted direct evidence of their intent to retaliate after her 1997 appeal and therefore strengthened the inference that her downgrade and nonselection were linked to her pursuit of Carpenter I.
 
 
 5
 On August 3, 1998 the district court granted Fannie Mae's motion for summary judgment without discovery and found that: (1) the September 1996 Kelly/Marra admonitions related solely to Carpenter I; (2) Fannie Mae's explanation of the downgrade (i.e., a larger pool of vice presidents against whom Carpenter was evaluated and the criticisms of two clients) demonstrated a legitimate, non-discriminatory rationale and, absent evidence that the criticisms were fabricated, her claim failed; and (3) Fannie Mae's explanation of her nonselection as senior vice president (i.e., the requirement of litigation experience) was also non-discriminatory. The district court further found Carpenter's contention that discovery might prove otherwise speculative. See JA 10-19. Carpenter timely appealed.
 
 II.
 
 6
 Carpenter urges that the district court erred in granting summary judgment because Fannie Mae allegedly retaliated against her in violation of DCHRA when it gave her a 4+ rating rather than the 5- she had received in the previous rating period.[3] Fannie Mae responds that the number of vice presidents against whom Carpenter was rated increased from eight to thirteen in 1997 as a result of reorganization, making the rating pool more competitive. Fannie Mae also cites negative evaluations from Williams and St. Johns that contrast with the uniformly positive comments received by her higher rated peers. These explanations provide legitimate, nonretaliatory reasons for Carpenter's downgrade. See Burdine, 450 U.S. at 257-58.
 
 
 7
 Moreover, Carpenter has failed to show that Fannie Mae's explanation was pretextual. We first reject her underlying contention that because she previously received a 5- and her performance has not changed, she had to have earned a 5- for 1997. See Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C.Cir.1996) (absent "error too obvious to be unintentional," court respects employer's "unfettered discretion" to evaluate employees) (citation omitted); Billet v. CIGNA Corp., 940 F.2d 812, 826 (3d Cir.1991) (rejecting argument based on past evaluations as theory "that things never change, a proposition clearly without basis in reality"), overruled in part on other grounds by St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Pre-1995 ratings were done by other supervisors and, of the vice presidents who received higher ratings than Carpenter in 1997, only one had been compared to Carpenter previously, receiving higher ratings than she in two previous years. We also find Carpenter's claim that St. John's and Williams's criticisms were the product of collusion and fabrication without record support. See Randall v. Howard Univ., 941 F.Supp. 206, 213 (D.D.C.1996) (granting summary judgment where plaintiff offered no evidence to support theory that employees conspired against her), aff'd, 132 F.3d 1482 (D.C.Cir.1997). Rather, Carpenter's admission that she had "little contact" with Williams may explain his view that she needed to assume greater responsibility and her failure to work directly with St. John on the Y2K project may similarly have led St. John to believe that she needed to be more "proactive." 56(f) Aff. at 4, 5 pp 13, 17, JA 69, 70; see Valentino v. United States Postal Serv., 674 F.2d 56, 66 (D.C.Cir.1982) (management judgments regarding professionals often depend on subjective criteria). Although Carpenter infers retaliatory intent from her supervisors' September 1996 comments, they also do not constitute evidence sufficient to allow a reasonable jury to infer that Fannie Mae's reasons for her November 1997 rating were false. Carpenter herself cites a narrative evaluation of her 1996 performance, which Marra wrote in March 1997 after his September 1996 comments and after she filed Carpenter I in October 1996, as an accurate portrayal of her performance and evidence that the November 1997 rating must be the product of retaliation. See Uhl v. Zalk Josephs Fabricators, Inc., 121 F.3d 1133, 1136 (7th Cir.1997) (intervening satisfactory rating defeats causal link).
 
 
 8
 Because Fannie Mae offered a legitimate nondiscriminatory reason for not selecting Carpenter for the senior vice president position--i.e., that Carpenter admittedly lacked the necessary litigation experience--Carpenter was required to show pretext by "demonstrat[ing] that the proffered reason was not the true reason for the employment decision." Burdine, 450 U.S. at 256. Aside from Kelly's and Marra's September 1996 comments, the contentious nature of Carpenter I and the cold shoulder treatment which purportedly followed, Carpenter merely theorized that litigation experience was a "false qualification" intended solely to explain away her nonselection. Although Carpenter contends that the Position Description form left the criteria for senior vice president an open issue, it clearly required that a "successful candidate" have "substantial litigation or litigation management experience." Position Description, JA 59. Moreover, Fannie Mae in fact based its hiring decision, at least in part, on the applicants' litigation experience, giving final consideration only to those candidates with significant litigation experience. See SJA at 1-11.[4] Because Carpenter failed to rebut Fannie Mae's legitimate business reasons for the two challenged actions, the district court properly granted summary judgment to Fannie Mae. See Fischbach, 86 F.3d at 1183 (absent pretext, "court must respect the employer's unfettered discretion to choose among qualified candidates").
 
 
 9
 Carpenter alternatively sought remand for discovery under Fed.R.Civ.P. 56(f) (allowing pre-summary judgment discovery if "it appear[s] from the affidavits of a party opposing the motion that the party cannot for the reasons stated present by affidavit facts essential to justify the party's opposition"). Carpenter, however, had to indicate what facts she intended to discover that would create a triable issue and why she could not produce them in opposition to the motion. See Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C.Cir.1989). "It is well settled that [c]onclusory allegations unsupported by factual data will not create a triable issue of fact." Exxon Corp. v. FTC, 663 F.2d 120, 126-27 (D.C.Cir.1980) (quotation omitted, alteration original).
 
 
 10
 Carpenter sought discovery relating to her performance downgrade by merely pointing to the disparity between Williams's and St. John's criticisms and the compliments of other coworkers and arguing that "this contrast raises an inference that the criticisms were fabricated or, at a minimum, immaterial," Appellant's Br. at 32, a plainly conclusionary assertion without supporting facts. Carpenter also alleged that other vice presidents performed worse or no better than she did but offered no reasonable basis to suggest that discovery would show either that Fannie Mae made an error too obvious to be unintentional or actually believed that she performed better than her peers. See Fischbach, 86 F.3d at 1182 (to show pretext, issue is not correctness of employer's reasons but whether it honestly believes them). In fact, to the contrary, Marra averred in his affidavit that "[b]ased on my own experience and comments from Senior Vice Presidents who are clients of the Vice Presidents, the four Vice Presidents who received ratings of 5 or 5- exemplified [the high standards of the Legal Department], and their contributions clearly exceeded that of their peers." JA 55. Carpenter further suggested that litigation experience is a false credential for senior vice president but failed to describe what new facts she believed could be obtained by discovery to support her theory. See Strang, 864 F.2d at 861 (desire to "test" affiants' testimony does not justify Rule 56(f) discovery). Instead, Carpenter supported her request for discovery with undisputed facts--that senior vice presidents in the past lacked litigation expertise and that the Legal Department does not engage directly in litigation--which in themselves do not create an inference of pretext. Accordingly, the district court did not abuse its discretion in denying Carpenter's discovery request. See Exxon Corp., 663 F.2d at 126 (Rule 56(f) ruling reviewed for abuse of discretion).
 
 
 11
 For the foregoing reasons, the district court's grant of summary judgment to the Federal National Mortgage Association is
 
 
 12
 Affirmed.
 
 
 
 [1]
 In relevant part, section 1-2525(a) states, "It shall be an unlawful discriminatory practice to ... retaliate against ... any person in the exercise ... of ... any right granted or protected under this chapter." See also Blackman v. Visiting Nurses Ass'n, 694 A.2d 865, 868 (D.C.1997) (looking to federal law to interpret DCHRA)
 
 
 [2]
 St. John, Senior Vice President for Guaranty and Franchise Technology, and Williams, Senior Vice President for Customer Technology Services, were internal clients of Carpenter's legal services at Fannie Mae. See Carpenter v. Federal Nat'l Mortgage Ass'n, No. 1:98CV00563, at 4 pp 12-14 (D.D.C. Mar. 31, 1998) (Decl. of Anthony F. Marra), JA 55. St. John criticized Carpenter's work on a Y2K project as "weak" in that she "was not proactive in seeking to identify and solve potential legal issues." Id. Williams stated that Carpenter needed to "become more proactive and to assume greater responsibility as an advisor to the business." Id
 
 
 [3]
 A DCHRA plaintiff must first make a prima facie showing of retaliation. See McKenna v. Weinberger, 729 F.2d 783, 790 (D.C.Cir.1984); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); O'Donnell v. Associated Gen. Contractors of Am., Inc., 645 A.2d 1084, 1086 (D.C.1994) (burden of proof for claim of disparate treatment based on federal law applicable to DCHRA). To do so, he must establish that he was engaged in a protected activity, that his employer took adverse personnel action against him and that the two events were causally connected. See Arthur Young & Co. v. Sutherland, 631 A.2d 354, 368 (D.C.1993). After the plaintiff makes a prima facie showing, a presumption of retaliation arises that shifts the burden of production to the employer to rebut the prima facie case by producing "clear and reasonably specific" evidence that its actions were taken for legitimate, nonretaliatory reasons. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If an employer meets its burden of articulating a non-retaliatory reason, the burden of production shifts back to the plaintiff, who "must have the opportunity to demonstrate that the proffered reason was not ... true." Id. at 256. The plaintiff's burden of production "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." Id. The plaintiff can meet the burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (citing McDonnell Douglas Corp., 411 U.S. at 804-05). If he successfully shows that a retaliatory motive played a motivating part in an adverse employment decision, the employer can nevertheless avoid liability by demonstrating by a preponderance of the evidence that it would still have taken the same action absent retaliatory motive. See Price Waterhouse v. Hopkins, 490 U.S. 228, 252-53, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); Berger v. Iron Workers Reinforced Rodmen, Local 201, 170 F.3d 1111, 1125 (D.C.Cir.1999). We review de novo the grant of summary judgment, applying the same standard utilized by the lower court. See Transactive Corp. v. United States, 91 F.3d 232, 236 (D.C.Cir.1996)
 
 
 [4]
 Carpenter argues for the first time on appeal that evidence of the candidates' credentials included in their resumes was inadmissible hearsay and that statements in Kelly's declaration relating to those credentials did not conform with Fed.R.Civ.P. 56(e) (requiring affidavits based on "personal knowledge"). Carpenter waived these arguments by not raising them below and therefore we need not consider them. See District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1084-85 (D.C.Cir.1984)