Olivier **BANCOULT** et al., Plaintiffs,

v.

Robert S. **MCNAMARA**
et al., Defendants.

**Civil Action No. 01–2629(RMU).**

United States District Court,
District of Columbia.

Sept. 30, 2003.

Michael Edward Tigar, Washington, DC, for plaintiffs.

Richard Montague, U.S. Department of Justice, Civil Division, Ben Franklin Station, Elaine Marzetta Lacy, U.S. Department of Justice, Torts Branch, Michael R. Charness, I, John David Taurman, Vinson & Elkins, L.L.P., Cynthia T. Andreason, Wiley Rein & Fielding, LLP, and John David Taurman, Vinson & Elkins, L.L.P., Washington, DC, for defendants.

## *MEMORANDUM OPINION*

**DENYING THE PLAINTIFFS' MOTIONS TO PERMIT
DISCOVERY; DENYING THE PLAINTIFFS'
MOTIONS FOR ENLARGEMENT OF TIME;
SETTING A REVISED BRIEFING SCHEDULE**

URBINA, District Judge.

## I. INTRODUCTION

This matter comes before the court on the plaintiffs' motions to permit discovery pursuant to Federal Rule of Civil Procedure 56(f) and for enlargements of time to respond to the motions to dismiss and for summary judgment filed by defendants Halliburton Company ("Halliburton") and Brown & Root, Inc. ("Brown & Root") (collectively, "the defendants"). The plaintiffs are persons indigenous to the Chagos Archipelago ("Chagos"), their survivors or direct descendants, or organizations interested in the betterment of the Chagossian community. They bring this class action against the United States, several current and former federal officials, and the defendants for forced relocation, torture, racial discrimination, cruel, inhuman, and degrading treatment, genocide, intentional infliction of emotional distress, negligence, and trespass. Because the plaintiffs have not met their burden of showing a reasonable basis to suggest that discovery would reveal triable issues of fact, the court denies the plaintiffs' motions to permit discovery, denies the plaintiffs' motions for enlargement of time, and sets a revised briefing schedule.

## II. BACKGROUND

### A. Factual Background

Chagos is a grouping of small islands in the middle of the Indian Ocean, at least 1,000 miles away from the nearest landmasses of India, Mauritius, Australia, and the Gulf States. Am. Compl. ¶ 10. It includes the islands of Diego Garcia, Peros Banhos, Salomon, and numerous other small islands. *Id.* ¶ 8. Ceded to the United Kingdom by the French in 1814, Chagos became part of the British colony of Mauritius, and continues under British administration today. *Id.* ¶¶ 9–10, 18. Its population, which numbered more than 550 in 1861, had grown to approximately 1,000 inhabitants by the 1960s. *Id.* ¶¶ 8, 10.

In 1964, the British and United States governments entered into negotiations to establish a United States military facility in the Indian Ocean. *Id.* ¶ 17. One year later, in 1965, the British government detached Chagos from Mauritius and incorporated the archipelago in a newly created British Indian Ocean Territory ("BIOT"). *Id.* ¶ 9. Between 1965 and 1973, the Chagos population was removed to Mauritius and Seychelles. *Id.* ¶¶ 21–23. Subsequently, in 1981, the United States Navy entered into a contract ("the Navy contract") with Brown & Root, a subsidiary of Halliburton, to construct the proposed U.S. facility on Diego Garcia, the largest of the Chagos islands. *Id.* ¶¶ 25, 48, 48.1.

### B. Procedural History

On December 20, 2001, the plaintiffs filed a complaint against the United States, the federal officials, Halliburton, and Mauritian company De Chazal Du Mée & Cie ("DCDM"). The United States, the federal officials, and DCDM responded by filing motions to dismiss, while Halliburton responded with a motion to dismiss and for summary judgment.

On February 14, 2002, the plaintiffs moved for a preliminary injunction to bar the United States and DCDM from engaging in allegedly discriminatory policies and practices. On September 30, 2002, the court issued a

memorandum opinion denying the plaintiffs' motion for a preliminary injunction, ordering further briefing on the United States' motion to dismiss for lack of subject-matter jurisdiction and granting DCDM's motion to dismiss for ineffective service of process. *Bancoult v. McNamara,* 227 F.Supp.2d 144 (D.D.C. 2002).

On November 12, 2002, the plaintiffs moved for leave to amend their complaint to reinstate DCDM and add Brown & Root as defendants. On March 10, 2003, the court issued a memorandum opinion granting the plaintiffs leave to amend with regard to the United States, the federal officials, and the defendants, and denying the plaintiffs' motion to amend with regard to DCDM.[1] *Bancoult v. McNamara,* 214 F.R.D. 5 (D.D.C. 2003).

In response to the plaintiffs' amended complaint, Halliburton renewed its motion to dismiss and for summary judgment, and Brown & Root filed a similar motion to dismiss and for summary judgment. The plaintiffs responded with motions to permit discovery pursuant to Rule 56(f) and for enlargements of time to respond to the defendants' respective motions to dismiss and for summary judgment.[2] The court now turns to the plaintiffs' motions to permit discovery and for enlargements of time.

## III. ANALYSIS

### A. Legal Standard for a Rule 56(f) Motion

Under Rule 56(f), a court "may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion." *Strang v. United States Arms Control & Disarmament Agency,* 864 F.2d 859, 861 (D.C.Cir.1989); *Londrigan v. Fed. Bureau of Investigation,* 670 F.2d 1164, (D.C.Cir.1981). "[T]he purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discov-

---

1. As noted, the plaintiffs filed their motion for leave to amend their complaint on November 12, 2002. Under Local Civil Rule 15.1, an amended complaint is "deemed to have been filed ... on the date on which the order granting the motion is entered." LCvR 15.1. Accordingly, the Clerk of the Court did not docket the plaintiffs' amended complaint until March 10, 2003, the date on which the court granted in part and denied in part the plaintiffs' motion. Between November 12, 2002 and March 10, 2003, however, the parties filed and the Clerk docketed various submissions relating to the amended complaint. As a result, the briefing reflected in the docket is not in chronological order.

In an effort to clarify the record, the plaintiffs and the defendants submitted an Agreed Stipulation Regarding Pending Motions and a Supplemental Agreed Stipulation. Reading the parties' stipulations as a request to the court, the court clarifies that with regard to the defendants, the following submissions address the amended complaint:

With regard to Halliburton: Halliburton's motion [# 61] to dismiss and for summary judgment (incorporating by reference Halliburton's motion [# 20] to dismiss and for summary judgment); the plaintiffs' motion [# 63] for enlargement of time to respond to Halliburton's motion to dismiss and the plaintiffs' errata [# 67] thereto; the plaintiffs' motion [# 66] to conduct discovery pursuant to Rule 56(f) and for enlargement of time to respond to Halliburton's motion for summary judgment (incorporating by reference the plaintiffs' motion [# 25] to permit discovery pursuant to Rule 56(f)); Halliburton's opposition [# 36] to the plaintiffs' motion to conduct discovery (incorporated by reference by # 61); the plaintiffs' reply [# 37] to Halliburton's opposition (incorporated by reference by # 66); and Halliburton's unopposed motion [# 45] for leave to file a sur-reply (incorporated by reference by # 61 pursuant to # 93).

With regard to Brown & Root: Brown & Root's motion [# 77] to dismiss and for summary judgment (incorporating by reference Halliburton's motion [# 20] to dismiss and for summary judgment); the plaintiffs' motion [# 70] for enlargement of time to respond to Brown & Root's motion to dismiss; the plaintiffs' motion [# 92] to conduct discovery pursuant to Rule 56(f) and for enlargement of time to respond to Brown & Root's motion for summary judgment (incorporating by reference the plaintiffs' motion [# 25] to permit discovery pursuant to Rule 56(f)); Brown & Root's opposition [# 71] to the plaintiffs' motion to conduct discovery (incorporating by reference Halliburton's opposition [# 36] to the plaintiffs' motion to conduct discovery and Halliburton's unopposed motion [# 45] for leave to file a sur-reply); and the plaintiffs' reply [# 72] to Brown & Root's opposition.

2. Although the plaintiffs style their motions as motions "to conduct discovery," the court refers to them as motions "to permit discovery" to track the language of Rule 56(f) and avoid any possibility of confusion with Rules 26 or 37.

ery." *Dickens v. Whole Foods Market Group, Inc.,* 2003 WL 21486821, at *2 n. 5 (D.D.C. Mar.18, 2003) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Whether the circumstances warrant a continuance to permit discovery is a decision that falls within the discretion of the district court. *Stella v. Mineta,* 284 F.3d 135, 147 (D.C.Cir.2002)

 A non-moving party seeking the protection of Rule 56(f) "must state by affidavit the reasons why he is unable to present the necessary opposing material." *Cloverleaf Standardbred Owners Ass'n, Inc. v. Nat'l Bank of Wash.,* 699 F.2d 1274, 1278 n. 6 (D.C.Cir.1983); *see also Hotel & Rest. Employees Union, Local 25 v. Attorney Gen.,* 804 F.2d 1256, 1269 (D.C.Cir.1986) (noting that this affidavit requirement helps "prevent fishing expeditions"), *vacated on other grounds,* 808 F.2d 847 (D.C.Cir.1987). The non-moving party bears the burden of identifying the facts to be discovered that would create a triable issue and the reasons why the party cannot produce those facts in opposition to the motion. *Byrd v. Envtl. Prot. Agency,* 174 F.3d 239, 248 n. 8 (D.C.Cir. 1999). The non-moving party must show a reasonable basis to suggest that discovery would reveal triable issues of fact. *Carpenter v. Fed. Nat'l Mortgage Ass'n,* 174 F.3d 231, 237 (D.C.Cir.1999). "It is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact." *Byrd,* 174 F.3d at 248 n. 8 (internal citations omitted); *see also Exxon Corp. v. Crosby–Miss. Res., Ltd.,* 40 F.3d 1474, 1488 (5th Cir.1995) (holding that Rule 56(f) may not defeat summary judgment "where the result of a continuance to obtain further information would be wholly speculative").

## B. The Court Concludes That a Continuance to Permit Discovery Is Not Warranted

### 1. The Parties' Arguments

In this case, the defendants move for summary judgment on the grounds that the plaintiffs' action is time-barred by the applicable statutes of limitations.[3] Halliburton Mot. for Summ. J. at 7, 9–10, 15–16, 20, 23, 27–29. In a two-paragraph statement of undisputed material facts, the defendants state that "[i]n or about 1981, Brown & Root, Inc. began construction operations on Diego Garcia pursuant to the contract with the United States Department of the Navy," and that "[b]ly 1987, Brown & Root, Inc. completed work pursuant to the referenced contract with the United States Department of the Navy." Halliburton Statement of Undisputed Material Facts ¶¶ 1–2. The defendants argue that even assuming that the plaintiffs did not know of their injury until 1981, when the contract work began, the plaintiffs would have had to bring this action by 1991 to fall within the longest applicable statute of limitations of 10 years. *E.g.,* Halliburton Mot. for Summ. J. at 10. Because the plaintiffs filed this action in December 2001, the defendants argue that the action is time-barred. *Id.*

In response, the plaintiffs contend that the court should defer ruling on the defendants' summary-judgment motions because the plaintiffs are entitled to discovery on the statute-of-limitations issue. Pls.' Renewed Halliburton Disc. Mot. at 2–3; Pls.' Brown & Root Disc. Mot. at 1. Although the plaintiffs do not dispute that the defendants completed the Navy contract in 1987, they declare that they have a "reasonable belief" that the defendants "continue to be involved in conduct in the Chagos Archipelago related to the Plaintiffs' claims." Tigar Decl. ¶¶ 6–7; Pls.' Halliburton Disc. Mot. at 3. Given this "reasonable belief," and because they believe their theories of continuing tort and conspiracy, if proven, would affect the tolling of any applicable statutes of limitations, the plaintiffs seek discovery on the relationship between the defendants and subcontractors on Chagos, the level of knowledge of the defendants' officials regarding the removal of the

---

**3.** As stated in note 1 *supra,* the defendants' pending motions for summary judgment incorporate by reference Halliburton's original motion for summary judgment on the claims in the original complaint. Halliburton Renewed Mot. for Summ. J. at 2; Brown & Root Mot. for Summ. J. at 2. For the sake of brevity, the court therefore cites primarily to the original Halliburton motion for summary judgment.

Chagossians and the continuing business interests of the defendants in Chagos and other regional contracts. *E.g.*, Pls.' Halliburton Disc. Mot. at 3.

The defendants counter by reiterating that they completed the Navy contract in 1987, and that their business records reveal no evidence of any subsequent business activity by Halliburton or its subsidiaries in Diego Garcia or Chagos. Halliburton Opp'n at 3–4; Brown & Root Opp'n at 4; Heinrich Decl. ¶¶ 3–5; Heinrich Supplemental Decl. ¶¶ 3–4. Against this background, the defendants contend that the plaintiffs have failed to state any basis—let alone a "reasonable" one—for their belief that defendants remain involved in Chagos after 1987. Halliburton Opp'n at 6–7; Brown & Root Opp'n at 6–7; Halliburton Sur-reply at 2. Specifically, the defendants argue that the plaintiffs cannot support their Rule 56(f) motion with facts that by themselves do not create any inference that the defendants were involved in Diego Garcia after 1987. Halliburton Opp'n at 10; Brown & Root Opp'n at 6. In addition, the defendants contend that the plaintiffs fail to show the specific facts they intend to discover, the relevance of those facts to the statute-of-limitations issue and the reason why they could not produce relevant evidence to justify their inability to respond to the summary-judgment motions. Halliburton Opp'n at 9–10; Brown & Root Opp'n at 6. Finally, the defendants state that even if the plaintiffs could articulate a reasonable basis for their belief in the defendants' continued involvement in Chagos, Rule 56(f) does not provide a license to conduct fishing expeditions in the hope of finding facts to oppose summary judgment. Halliburton Opp'n at 13; Brown & Root Opp'n at 6, 8.

## 2. The Plaintiffs Have Not Met Their Burden of Showing a Reasonable Basis To Suggest That Discovery Would Reveal Triable Issues of Fact

■ The court concludes that the plaintiffs have not carried their burden of showing a reasonable basis to suggest that discovery would reveal triable issues of fact on the statute-of-limitations question. *Carpenter*, 174 F.3d at 237; *Byrd*, 174 F.3d at 248 n. 8. The plaintiffs repeatedly state that they have a "reasonable basis" grounded in "specific evidence" or "facts" for their belief that, notwithstanding the defendants' affidavits to the contrary, the defendants continued to be involved in Chagos after completing the Navy contract in 1987.[4] *E.g.*, Pls.' Halliburton Disc. Mot. at 10; Pls.' Reply to Halliburton Opp'n at 2–3, 6, 8–11; Pls.' Reply to Brown & Root Opp'n at 3. The key facts on which the plaintiffs rely are as follows: Brown & Root is the exclusive logistics supplier for the Navy and the Army and recently entered into military contracts to provide services in the Balkans, Uzbekistan, and Cuba; Brown & Root has secured business opportunities, including Kuwaiti and potential Iraqi infrastructure projects, that relate to U.S. military actions utilizing the base on Diego Garcia; Brown & Root's oil-service contracts hinge on the security of U.S. oil interests in the region in which the Diego Garcia facility is located; Halliburton is the world's largest oilfield services company, is involved in oil exploration around the world and has extensive political connections; and certain former board members of Halliburton and Brown & Root knew of the plaintiffs' removal from Chagos before, during, and after the completion of the Navy contract.[5]

4. The plaintiffs strain to undermine the credibility of the defendants' declarations. With regard to the original declaration stating that searches of the defendants' records failed to indicate business activity in Diego Garcia after 1987, the plaintiffs contended that the declaration "[did] not conclusively rule out" the possibility of the defendants' continued involvement in Chagos because the defendants' searches were "limited in scope to Diego Garcia and failed to search for ... the rest of the Chagos Archipelago." Pls.' Reply to Halliburton Opp'n at 11 (citing Heinrich Decl.). After the defendants submitted a revised declaration indicating that their records search extended to the entire archipelago, the plaintiffs

maintained that the declaration does not "identify specifically which offices conducted searches and whether *all* company offices including *all* Brown & Root offices were searched." Pls.' Reply to Brown & Root Opp'n at 6 (emphasis in original) (citing Heinrich Supplemental Decl.). Even if the court were to discount the defendants' declarations, however, its conclusion regarding the plaintiffs' failure to meet their burden would remain unchanged.

5. Other facts cited by the plaintiffs, presumably in support of the key facts noted above, include the fact that Halliburton earns nearly $15 billion in annual revenue, retains 100,000 employees,

Pls.' Halliburton Disc. Mot. at 3, 6, 9; Pls.' Brown & Root Disc. Mot. at 9–10, 12–15; Pls.' Reply to Halliburton Opp'n at 9–10; Pls.' Reply to Brown & Root Opp'n at 4–5.

None of these facts, however, comes close to providing a reasonable basis for suggesting that the defendants were involved—either directly or indirectly—in Chagos after 1987. *Carpenter*, 174 F.3d at 237; *Byrd*, 174 F.3d at 248 n. 8. The fact that the defendants engage in global construction and energy exploration activities does not support an inference that the defendants engage in those activities or "may be present—whether officially or unofficially—in and around the Chagos Archipelago." Pls.' Reply to Brown & Root Opp'n at 4. Likewise, assuming *arguendo* that certain former board members were fully aware of the plaintiffs' removal from Chagos, that knowledge or awareness is not sufficient to infer that they (and by extension, the defendants) engaged in some kind of a conspiracy to remove the plaintiffs. *Id.* at 5. As a result, the plaintiffs' optimistic conclusion that these facts "create[ ] a reasonable basis for Plaintiffs' conspiracy and continuing involvement theories" is a classic example of a conclusory allegation unsupported by factual data. Pls.' Reply to Brown & Root Opp'n at 4; *accord Byrd*, 174 F.3d at 248 n. 8 (holding that the plaintiff's allegations that "there may well be" agency knowledge or documents that could aid his case was plainly conclusory); *Exxon Corp.*, 40 F.3d at 1487–88 (viewing the defendant's conclusion that "there is [a] reasonable probability of errors" constituting breaches of a contract as merely a request to conduct a fishing expedition). Because the plaintiffs have not shown a reasonable basis for their belief that the defendants remain involved in Chagos,

the court concludes that a continuance to permit discovery is not warranted. *Carpenter*, 174 F.3d at 237; *Byrd*, 174 F.3d at 248 n. 8.

Accordingly, the court denies the plaintiffs' motions to permit discovery. To avoid the difficulties presented by the parties' submissions that incorporate other submissions by reference,[6] the court also denies the plaintiffs' motions for enlargement of time and denies without prejudice the defendants' respective motions to dismiss and for summary judgment. Instead, the court sets a revised briefing schedule that will allow the parties to incorporate their respective arguments in single chains of briefing. *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C.Cir.1996) (noting the district court's ability to determine how best to manage its docket); *Marsh v. Johnson*, 263 F.Supp.2d 49, 54 (D.D.C.2003) (outlining the benefits of a single chain of briefing over piecemeal briefing).

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motions to permit discovery and sets a revised briefing schedule. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of September, 2003.

---

and has 7,000 customers in more than 120 countries; that Halliburton has a continuing stake in the region given its hydrocarbon exploration and development; that former Halliburton board member Anne Armstrong served as ambassador to the United Kingdom and was a signatory to the BIOT agreement; that former Halliburton board member Lawrence Eagleburger served as Assistant Secretary of Defense between 1982–1989; that Vice President Dick Cheney previously served as the Chief Executive Officer of Halliburton and received a retirement package worth more than $33.7 million; that Secretary of Defense Donald Rumsfeld recently visited the Caspian region; that the hottest new prospect for oil

is the Caspian Sea area and that American companies including Halliburton are betting that there will be a pipeline to the Indian Ocean; that the Navy contract called for dredging a lagoon, constructing an airstrip, parking apron, and transmitter and receiver structures; and that the General Accounting Office reported that the Navy contract was fraught with delay and mismanagement. Pls.' Halliburton Disc. Mot. at 6–12; Pls.' Brown & Root Disc. Mot. at 10–15; Bancoult Decl. ¶ 9.

6. *See* note 1, *supra*.