**Alfonso SULLIVAN, Jr., Plaintiff,**

v.

**THE CATHOLIC UNIVERSITY OF AMERICA, Defendant.**

**No. CIV.A. 03–1885(JR).**

United States District Court, District of Columbia.

Sept. 2, 2005.

Allen C. Wilson, Washington, DC, for Plaintiff.

James Bernard Sarsfield, O'Connell, O'Connell & Sarsfield, Rockville, MD, for Defendant.

MEMORANDUM

ROBERTSON, District J.

Alfonso Sullivan, Jr. has sued his former employer Catholic University of America alleging violations of the D.C. Human Rights Act (DCHRA), D.C.Code § 2–1402.11, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Catholic has moved for summary judgment. For the reasons set forth in this memorandum, the motion for summary judgment will be granted.

*Background*

Mr. Sullivan is African–American. He began working for Catholic in November 2001 as the University's first manager of training and development. He worked without incident until shortly after August 5, 2002, the day he attended a meeting at which University President David M. O'Connell was present. While Mr. Sullivan claims that he himself called the meeting to discuss discriminatory treatment of African–American employees, Catholic cites deposition testimony of President O'Connell to the effect that the director of the Office of Black Catholics of the Archdioceses of Washington called the meeting "so that he could come and discuss with me the Office of Black Catholics." Def. Ex. 3 at 38. Some ten weeks after the meeting, on October 28, 2002, Mr. Sullivan's office was moved to what he describes as a basement cubicle. He claims that the office move was done in retaliation for his participation in the August 5 meeting. Catholic asserts a legitimate, nonretaliatory reason for the move—that it was part of an office reorganization occasioned by the elimination of the Office of Vice-President for Administration. In that reorganization, employees like Mr. Sullivan, who worked in the Office of Human Resources, were reassigned to work under the Associate Vice President for Business Services, Charles Mann. Def. Ex. 5 at 23–24.

Mr. Sullivan also claims that he applied for a promotion to Director of Equal Employment and that his non-selection for the position was both discriminatory on account of his race (African–American) and retaliatory because of his participation in the August 5, 2002 meeting. Catholic's response is that Mr. Sullivan did not apply for the position and that, in any case, he was not qualified for it.

Mr. Sullivan makes a number of other allegations in support of his claims of discrimination. He states that, on July 12, 2002, after observing an exchange between members of the custodial staff, he noted that sexual harassment training was needed, and that Catholic's general counsel answered that such behavior was "a cultural issue for African–Americans, that's how they speak to their women." Def. Ex. 2, Answer to Interrogatory 8. He states further that Charles Mann, Associate Vice President for Business Services, called him "arrogant nigger" and "asshole," once "smacked the back of plaintiff's head," gave him a jazz recording and said "you probably like this kind of music," and generally badgered him about his lawsuit, his intent to hurt the University, his consulting work, and his relocation to a basement office. Def. Ex. 9, Answer to Interrogatory 9. These allegations of mistreatment by Mr. Mann are denied but will be taken as true for purposes of deciding the instant motion, *see Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

On June 4, 2004, Mr. Sullivan's supervisor Barbara Coughlin gave him a performance evaluation, under a cover letter titled "Written Warning—Unsatisfactory Job Performance." Def. Ex. 11. He received the lowest possible ranking on every criterion. The letter listed many areas in

which Mr. Sullivan's performance was unsatisfactory and stated that, unless he improved in the next two months, he would be terminated. *Id.* On July 22, 2004, Mr. Sullivan resigned.

### Analysis

Summary judgment will be granted upon a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), or if the record contains no genuine issue of material fact and no reasonable juror could find in favor of the non-movant. *Carter v. George Washington University*, 387 F.3d 872, 878 (D.C.Cir.2004).

### Procedural issues

One of the reasons why the defendant's motion for summary judgment will be granted in this case is that plaintiff has never complied with Local Civil Rule 7(h) and Federal Rule of Civil Procedure 56(e), which required him to file a statement of all genuine issues of material fact that he asserts are disputed. This disregard of procedural rules is sufficient without more to support summary judgment for the defendant. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145 (D.C.Cir.1996); *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C.Cir.1988). Plaintiff also failed properly to invoke Rule 56(f), *see King v. United States Dep't of Justice*, 830 F.2d 210, 232 n. 157 (D.C.Cir. 1987), or to point out the specific facts to which he would gain access if permitted further discovery, or to convincingly explain why he was unable to produce them at this time.[1] *See Carpenter v. Fed. Nat'l*

*Mortgage Assoc.*, 174 F.3d 231, 237 (D.C.Cir.1999).

### Race discrimination and retaliation claims

The D.C. Human Rights Act (DCHRA) prohibits employers from discriminating against employees in hiring, discharge, or with respect to "compensation, terms, conditions, or privileges of employment, including promotion ...." D.C.Code § 1–2512. Title 42 U.S.C. § 1981 ensures the rights of all citizens to make and enforce contracts, and to enjoy "all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Courts typically look to Title VII and its jurisprudence when addressing both DCHRA and § 1981 claims. *Carpenter*, 165 F.3d at 72; *Carney v. American Univ.*, 151 F.3d 1090, 1093 (D.C.Cir.1998).

In order to trigger the *McDonnell Douglas* burden-shifting scheme that courts have developed under Title VII and which applies equally under the DCHRA and under § 1981, *see Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C.Cir.1997), plaintiff must prove by a preponderance of the evidence: 1) that he is a member of a protected class; 2) that he suffered an adverse employment action; and 3) that the action yields an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the context of retaliation claims, the *McDonnell Douglas* scheme is triggered upon a showing 1) that the plaintiff engaged in protected activity; 2) that he suffered an adverse employment action; 3) and that these actions are causally connected. *Carter*, 387 F.3d at 878. When the plaintiff complains,

---

**1.** He asserts that he needs time to depose University President O'Connell who has denied attending the August 5, 2002 meeting, but the record includes deposition testimony in which President O'Connell admits and dis-

cusses his presence at the meeting, Def. Ex. 3. Plaintiff has provided no record of O'Connell's refusal to discuss the meeting with the plaintiff.

as does Mr. Sullivan here, that one of his employer's retaliatory acts was a failure to promote him or to consider him for promotion, the plaintiff must also show as part of his prima facie case, 4) that he applied for the position; and 5) that he was qualified for the position. *Id.*

Upon demonstrating a prima facie case of retaliation or discrimination, the burden of production shifts to the defendant employer to articulate a legitimate and non-discriminatory reason for taking the actions of which the plaintiff complains. *McDonnell Douglas,* 411 U.S. at 802–3, 93 S.Ct. 1817. If the employer is able to meet this burden by producing a credible reason explaining its actions, the presumption of discrimination or retaliation disappears, and the plaintiff is afforded an opportunity to show that the employer's proffered reason is in fact pretext for discrimination and retaliation. *Id.* at 804, 93 S.Ct. 1817.

■ Plaintiffs' prima facie case of race discrimination and retaliation as to his office relocation and his nonselection for the EEO position will be deemed sufficient for purposes of this motion, although it is insubstantial. Plaintiff has not made out a prima facie case, however, with respect to his claim that his performance appraisal rating of unsatisfactory was retaliatory. Plaintiff's supervisor Barbara Coughlin conducted the evaluation about 22 months after the meeting with Father O'Connell on which plaintiff relies as protected activity. Twenty-two months was not "shortly after [the protected] activity.'" *Holbrook v. Reno,* 196 F.3d 255, 263 (D.C.Cir.1999); *see Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–4, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (20 month time lapse suggests no causality at all in retaliation case).

*Plaintiff has failed to adduce evidence of pretext*

■ A plaintiff may defeat a motion for summary judgment that sets forth a legitimate, nondiscriminatory reason by demonstrating that the employer's proffered rationale was a pretext for discrimination in that it was false. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 514–17, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Catholic has adduced affidavit evidence to support the legitimate, nondiscriminatory reasons it asserts for each of the adverse actions that form parts of plaintiff's claim. Thus, according to the Mann affidavit, plaintiff's office was moved to the basement as part of an office reorganization. The office of human resources, in which the plaintiff worked, was reassigned to the Associate Vice–President for Business Services. The departmental reorganization affected "men, women blacks, whites, and management and non-management employees," Mann Affidavit ¶ 7, causing the relocation of 21 of the 24 offices affected by the reorganization. *Id.* at ¶¶ 3–5. Three employees, including Mr. Sullivan, were moved to interior offices with modular walls. *Id.* ¶ 5. Mr. Sullivan asked for and was given a corner office when it became available. *Id.* ¶¶ 5–6. Plaintiff states only that he was unaware of other office relocations. He offers no evidence to dispute the Mann affidavit.

As for the plaintiff's non-selection for the position of equal opportunity officer, Catholic first asserts that he did not apply for it. The position was filled in August 2003, and both of the reference letters that Mr. Sullivan submitted with his application are dated September 3, 2003. Def. Ex. 8–9. The defendant has also produced an affidavit from Ms. Alvita Eason, who authored one of the plaintiff's reference letters. In it she states that Mr. Sullivan informed her in late 2003 or early 2004

that he never submitted the letter Ms. Eason had written on his behalf or indeed applied for the EEO position at all. Def. Reply Ex. 1. Even if he had applied, Catholic asserts he would never have been selected for the position, because he lacked the requisite qualifications of eight years experience in EEO work. See Parker affidavit, Attachment A.[2] In reviewing an employer's personnel decisions, " '[s]hort of finding that the employer's stated reason was indeed a pretext ... the court must respect the employer's unfettered discretion to choose among qualified candidates." *Mungin*, 116 F.3d at 1556 (citing *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C.Cir.1996)); *Carpenter*, 174 F.3d at 237 (affirming summary judgment where employer based hiring decision at least in part on applicant's superior litigation experience and employee failed to rebut this legitimate business reason).

The plaintiff has offered no evidence to contradict his supervisor's documented and nondiscriminatory reasoning for giving him a poor evaluation in June 2004 and admonishing him to improve his performance within two months or face termination. In a cover letter accompanying the evaluation, Ms. Coughlin informed the plaintiff that he had "not made any significant progress on the major tasks before [him]," and went on to name the specific projects and tasks on which his progress was either lacking, insignificant, or negligible. Def. Ex. 11. The plaintiff has proffered no evidence to demonstrate that Catholic's neutral reason for giving him an unsatis-

factory appraisal was not credible, or that the real reason he received a negative appraisal was retaliatory or discriminatory.

*Hostile work environment and constructive discharge*

■ To prove constructive discharge an employee must show that " 'the employer deliberately made working conditions intolerable and drove the employee' out." *Mungin*, 116 F.3d at 1558 (citing *Clark v. Marsh*, 665 F.2d 1168, 1173 (D.C.Cir. 1981)). Taking all of Mr. Sullivan's allegations as true, his claims of hostile work environment and constructive discharge fail as a matter of law. The isolated comments and incidents attributed to Mr. Mann do not in the aggregate show that Catholic perpetrated a deliberate plan to force the plaintiff's resignation. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (citation omitted) (a hostile work environment is permeated with intimidation, ridicule, and insult that alter work conditions and create abusive work environment); *Tomasello v. Rubin*, 167 F.3d 612, 620 (D.C.Cir.1999) (upholding district court's dismissal of hostile work environment and constructive discharge claims where alleged behavior was "insufficiently severe and pervasive as a matter of law").

An appropriate order accompanies this memorandum.

## ORDER

For the reasons stated in the accompanying memorandum, the defendant Catho-

2. According to the vacancy announcement, Catholic sought someone with at least 8 years experience "including responsibility for ADA, Title VII, the Rehabilitation Act, Executive Order 11246 and other applicable laws and regulations, [and] proven experience conducting training programs and representing respondent in equal opportunity charges and OFCCP negotiation." Parker Affidavit, At-

tachment A. In his job application for director of equal opportunity, Mr. Sullivan noted his experience in conducting and coordinating training and recruitment, but he made no mention of any experience representing employees in EEO proceedings, or working with relevant EEO statutes. Parker affidavit, Attachment C.

lic University's motion for summary judgment [# 26] is granted.